IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) Plaintiff, ) ) ) ) ) v. ) ) ARKANSAS BAPTIST COLLEGE, ) ) Defendant. ) ) | FILED U.S. DISTRICT COURT EASTERN DISTRICT ARKANSAS JUL 26 2010 JAMES W. McCORMACK, CLERK By: _____ DEP CLERK CIVIL ACTION NO. 4-10-CV-1072BSM COMPLAINT JURY TRIAL DEMAND This case assigned to District Judge Miller and to Magistrate Judge Deere |

## NATURE OF THE ACTION

This is an action under the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of retaliation and to provide appropriate relief to Mary Jarrett. As alleged with greater particularity in paragraphs 9(a)-(l), 12(a)-(l), 16(a)-(l), and 19(a)-(l) below, the Commission alleges that Defendant Arkansas Baptist College subjected Ms. Jarrett, then age 60, to retaliation for engaging in protected activities. Specifically, Defendant denied Mary Jarrett the opportunity to teach classes at the college and discharged her from the alumni affairs position because she filed a charge of discrimination with the Commission.

## JURISDICTION AND VENUE

1.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938

(the "FLSA"), as amended, 29 U.S.C. §§216(c) and 217; and Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. §1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for Eastern District of Arkansas, Western Division.

**PARTIES**

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of the ADEA and is expressly authorized to bring this action by Section 7(b) of the ADEA, 29 U.S.C. § 626(b), as amended by Section 2 of Reorganization Plan No. 1 of 1978, 92 Stat. 3781, and by Public Law 98-532 (1984), 98 Stat. 2705.

4. The Commission is also the agency charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C.§ 2000e-5(f)(1) and (3).

5. At all relevant times, Defendant Arkansas Baptist College ("Defendant Employer"), has continuously been an Arkansas nonprofit corporation doing business in the State of Arkansas and the City of Little Rock and has continuously had at least 15 employees.

6. At all relevant times, Defendant Employer has continuously been an Arkansas nonprofit corporation doing business in the State of Arkansas and the City of Little Rock and has continuously had at least 20 employees.

7. At all relevant times, Defendant Employer has continuously been an employer

engaged in an industry affecting commerce within the meaning of Sections 11(b), (g) and (h) of the ADEA, 29 U.S.C. §§ 630(b), (g) and (h); and within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## CONCILIATION

8. Prior to institution of this lawsuit, the Commission's representatives attempted to eliminate the unlawful employment practices alleged below and to effect voluntary compliance with the ADEA through informal methods of conciliation, conference, and persuasion within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## STATEMENT OF ADEA CLAIMS

9. Since at least May of 2008 and continuing, Defendant Employer engaged in unlawful employment practices at its location in Little Rock, Arkansas, in violation of the ADEA, 29 U.S.C. § 623 (d). The unlawful employment practice includes, retaliating against Mary Jarrett by denying her the opportunity to teach classes because she filed an EEOC charge based in part on her age, 60.

(a) Mary Jarrett was hired as a teacher in August of 1969.

(b) In the 1980s, Jarrett was appointed to Academic Dean, and following this position she became Vice President for Academic Affairs. While Vice President, she served as Interim President of the college for approximately eight months in 2001 and Acting President for approximately eight months in 2005-2006.

(c) In 2006 President Fitz Hill appointed Jarrett to the Director of Alumni and Nontraditional Student Relations, and she held this position for approximately two years.

(d) In May of 2008, President Hill demoted Jarrett to an Alumni Affairs position with

3

a significant reduction in salary. During this discussion, Hill indicated Jarrett would remain in the position for the next year.

(e) Prior to her demotion, Jarrett had never had any performance evaluations and was never told that her performance or that of her department was deficient.

(f) Mary Jarrett's contract was renewed by letter from Hill dated October 1, 2008. While the letter stated her employment was on an as-needed basis and could be terminated at the discretion of the college President, Jarrett believed that it would not end until October 2009 because her contract had been renewed.

(g) On November 14, 2008, Charging Party filed a Charge of Discrimination alleging that she had been demoted to the alumni affairs position, in part because of her age, 60.

(h) In early January of 2009, Dr. Tracey Moore, Department Chair for Social and Behavioral Sciences, contacted Jarrett and asked her to teach two classes for the coming spring semester. Classes were scheduled to begin on or about January 12, 2009, and Jarrett agreed to teach the classes.

(i) A few days after talking to Jarrett, Moore contacted Human Resources Director Pam Brimley to check on the status of Jarrett's contract to teach. Brimley told Moore that Jarrett would not be permitted to teach the classes because Jarrett had an EEOC charge that needed to be resolved first.

(j) Defendant Employer had a 45-year-old faculty member teach the two courses previously offered to Ms. Jarrett.

(k) By letter dated April 30, 2009, Jarrett was notified that her health insurance would cease as of July 31, 2009, and her alumni affairs position would cease August 31, 2009.

4

(l)     Although Defendant Employer stated that it made a policy decision to reduce the number of adjunct instructors by having only full-time faculty members teach, Jarrett was the only adjunct instructor replaced by full-time faculty.

(m)     Jarrett filed her second Charge of Discrimination on June 10, 2009. The charge alleged, among other things, that her alumni affairs position was terminated in retaliation for filing her previous charge of discrimination.

10.     The effect of the practices complained of in Paragraph 9(a)-(l) above has been to deprive Mary Jarrett of equal employment opportunities and otherwise adversely affect her status as an employee because of engaging in activity protected by law.

11.     The unlawful employment practices complained of in Paragraph 9(a)-(l) above were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

12.     Since at least May of 2008 and continuing, Defendant Employer engaged in unlawful employment practices at its location in Little Rock, Arkansas, in violation of the ADEA, 29 U.S.C. § 623 (d). The unlawful employment practice includes, retaliating against Mary Jarrett by discharging her from the alumni affairs position because she filed an EEOC charge based on her age, then 60.

(a)     Mary Jarrett was hired as a professor in August of 1969.

(b)     In the 1980s, Jarrett was appointed to Academic Dean, and following this position she became Vice President for Academic Affairs. While Vice President, she served as Interim President of the college for approximately eight months in 2001 and Acting President for approximately eight months in 2005-2006.

(c)     In 2006 President Fitz Hill appointed Jarrett to the Director of Alumni and

5

Nontraditional Student Relations, and she held this position for approximately two years.

(d)  In May of 2008, President Hill demoted Jarrett to an Alumni Affairs position with a significant reduction in salary. During this discussion, Hill indicated Jarrett would remain in the position for the next year.

(e)  Prior to her demotion, Jarrett had never had any performance evaluations and was never told that her performance or that of her department was deficient.

(f)  Mary Jarrett's contract was renewed by letter from Hill dated October 1, 2008. While the letter stated her employment was on an as-needed basis and could be terminated at the discretion of the college President, Jarrett believed that it would not end until October 2009 because her contract had been renewed.

(g)  On November 14, 2008, Jarrett filed a Charge of Discrimination alleging that she had been demoted to a consultant position, in part because of her age, 60.

(h)  In early January of 2009, Dr. Tracey Moore, Department Chair for Social and Behavioral Sciences, contacted Jarrett and asked her to teach two classes for the coming spring semester. Classes were scheduled to begin on or about January 12, 2009, and Jarrett agreed to teach the classes.

(i)  A few days after talking to Jarrett, Moore contacted Human Resources Director Pam Brimley to check on the status of Jarrett's contract to teach. Brimley told Moore that Jarrett would not be permitted to teach the classes because Jarrett had an EEOC charge that needed to be resolved first.

(j)  Defendant Employer had a 45-year-old faculty member teach the two courses previously offered to Ms. Jarrett.

6

(k) By letter dated April 30, 2009, Jarrett was notified that her health insurance would cease as of July 31, 2009, and her alumni affairs position would cease August 31, 2009.

(l) Although Defendant Employer stated that it made a policy decision to reduce the number of adjunct instructors by having only full-time faculty members teach, Jarrett was the only adjunct instructor replaced by full-time faculty.

(m) Jarrett filed her second Charge of Discrimination on June 10, 2009. The charge alleged, among other things, that her alumni affairs position was terminated in retaliation for filing her previous charge of discrimination.

13. The effect of the practices complained of in Paragraph 12(a)-(l) above has been to deprive Mary Jarrett of equal employment opportunities and otherwise adversely affect her status as an employee because of engaging in activity protected by law.

14. The unlawful employment practices complained of in Paragraph 12(a)-(l) above were and are willful within the meaning of Section 7(b) of the ADEA, 29 U.S.C. § 626(b).

## STATEMENT OF TITLE VII CLAIMS

15. More than thirty days prior to the institution of this lawsuit, Mary Jarrett filed a charge with the Commission alleging violations of Title VII by Defendant Employer. All conditions precedent to the institution of this lawsuit have been fulfilled.

16. Since at least May of 2008 and continuing, Defendant Employer engaged in unlawful employment practices at its location in Little Rock, Arkansas, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3. The unlawful employment practices include, but are not limited to, denying Jarrett the opportunity to teach classes because she filed an EEOC charge based, in part, on her sex.

(a) Mary Jarrett was hired as a teacher in August of 1969.

(b) In the 1980s, Jarrett was appointed to Academic Dean, and following this position she became Vice President for Academic Affairs. While Vice President, she served as Interim President of the college for approximately eight months in 2001 and Acting President for approximately eight months in 2005-2006.

(c) In 2006 President Fitz Hill appointed Jarrett to the Director of Alumni and Nontraditional Student Relations, and she held this position for approximately two years.

(d) In May of 2008, President Hill demoted Jarrett to the Alumni Affairs position with a significant reduction in salary. During this discussion, Hill indicated Jarrett would be in the Alumni Affairs position for the next year.

(e) Prior to her demotion, Jarrett had never had any performance evaluations and was never told that her performance or that of her department was deficient.

(f) Jarrett's position was renewed by letter from Hill dated October 1, 2008. While the letter stated her employment was on an as needed basis and could be terminated at the discretion of the college President, Jarrett believed that it would not end until October 2009 because her position had been renewed.

(g) On November 14, 2008, Jarrett filed a Charge of Discrimination alleging that she had been demoted to the Alumni Affairs position, in part, because of her sex.

(h) In early January of 2009, Dr. Tracey Moore, Department Chair for Social and Behavioral Sciences, asked Jarrett to teach two classes for the coming spring semester. Classes were scheduled to begin on or about January 12, 2009, and Jarrett agreed to teach the classes.

(i) A few days after talking to Jarrett, Moore contacted Human Resources Director

8

Pam Brimley to check on the status of Jarrett's contract to teach. Brimley told Moore that Jarrett would not be permitted to teach the classes because Jarrett had an EEOC charge that needed to be resolved first.

(j)     Defendant Employer allowed a male faculty member teach the two courses previously offered to Jarrett.

(k)     By letter dated April 30, 2009, Jarrett was notified that her health insurance would cease as of July 31, 2009, and her alumni affairs position would cease August 31, 2009.

(l)     Although Defendant Employer stated that it made a policy decision to reduce the number of adjunct instructors by having only full-time faculty members teach, Jarrett was the only adjunct instructor replaced by full-time faculty.

(m)    Jarrett filed her second Charge of Discrimination on June 10, 2009, alleging that she was denied the opportunity to teach and that her consulting position was terminated in retaliation for filing her previous Charge.

17.    The unlawful employment practices complained of in Paragraph 16(a)-(l) were and are intentional.

18.    The unlawful employment practices complained of in Paragraph 16(a)-(l) were done with malice or with reckless indifference to the federally protected rights of Mary Jarrett.

19.    Since at least May of 2008 and continuing, Defendant Employer engaged in unlawful employment practices at its location in Little Rock, Arkansas, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3. The unlawful employment practice includes retaliating against Mary Jarrett by discharging her from the alumni affairs position because she filed an EEOC charge based, in part, on her sex, female.

(a)     Mary Jarrett was hired as a professor in August of 1969.

(b)     In the 1980s, Jarrett was appointed to Academic Dean, and following this position she became Vice President for Academic Affairs. While Vice President, she served as Interim President of the college for approximately eight months in 2001 and Acting President for approximately eight months in 2005-2006.

(c)     In 2006 President Fitz Hill appointed Jarrett to the Director of Alumni and Nontraditional Student Relations, and she held this position for approximately two years.

(d)     In May of 2008, President Hill demoted Jarrett to an Alumni Affairs position with a significant reduction in salary. During this discussion, Hill indicated Jarrett would remain in the position for the next year.

(e)     Prior to her demotion, Jarrett had never had any performance evaluations and was never told that her performance or that of her department was deficient.

(f)     Mary Jarrett's contract was renewed by letter from Hill dated October 1, 2008. While the letter stated her employment was on an as-needed basis and could be terminated at the discretion of the college President, Jarrett believed that it would not end until October 2009 because her contract had been renewed.

(g)     On November 14, 2008, Jarrett filed a Charge of Discrimination alleging that she had been demoted to a consultant position, in part because of her sex, female.

(h)     In early January of 2009, Dr. Tracey Moore, Department Chair for Social and Behavioral Sciences, contacted Jarrett and asked her to teach two classes for the coming spring semester. Classes were scheduled to begin on or about January 12, 2009, and Jarrett agreed to teach the classes.

(i)     A few days after talking to Jarrett, Moore contacted Human Resources Director Pam Brimley to check on the status of Jarrett's contract to teach. Brimley told Moore that Jarrett would not be permitted to teach the classes because Jarrett had an EEOC charge that needed to be resolved first.

(j)     Defendant Employer had a male faculty member teach the two courses previously offered to Ms. Jarrett.

(k)     By letter dated April 30, 2009, Jarrett was notified that her health insurance would cease as of July 31, 2009, and her alumni affairs position would cease August 31, 2009.

(l)     Although Defendant Employer stated that it made a policy decision to reduce the number of adjunct instructors by having only full-time faculty members teach, Jarrett was the only adjunct instructor replaced by full-time faculty.

(m)    Jarrett filed her second Charge of Discrimination on June 10, 2009. The charge alleged, among other things, that her alumni affairs position was terminated in retaliation for filing her previous charge of discrimination.

20.    The unlawful employment practices complained of in Paragraph 19(a)-(l) were and are intentional.

21.    The unlawful employment practices complained of in Paragraph 19(a)-(l) were done with malice or with reckless indifference to the federally protected rights of Mary Jarrett.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.     Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from

engaging in retaliation by denying employees the opportunity to teach and discharging employees for complaining of any federally protected rights.

B.      Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities for all employees and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant Employer to make whole Mary Jarrett who was subjected to Defendant Employer's practice of discriminatory conduct by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and all other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, reinstatement of her Alumni Affairs position, expungement of personnel records, and restoration of all benefits and health insurance benefits to which Mary Jarrett would have been entitled from the dates of the unlawful conduct to the present.

D.      Grant a judgment requiring Defendant Employer to pay appropriate back wages in an amount to be determined at trial, an equal sum as liquidated damages, and prejudgment interest to Mary Jarrett whose wages are being unlawfully withheld as a result of the acts complained of in Paragraphs 9(a)-(l) and 12(a)-(l) above.

E.      Order Defendant Employer to make whole Mary Jarrett by providing compensation for past pecuniary losses resulting from the unlawful employment practices described in Paragraphs 16(a)-(l) and 19(a)-(l) above, including job search and replacement benefits' expenses and out-of-pocket medical expenses, in amounts to be determined at trial.

F.      Order Defendant Employer to make whole Mary Jarrett who was subjected to Defendant Employer's practice of discriminatory conduct by providing compensation for past

and future non-pecuniary losses resulting from the unlawful practices complained of in Paragraphs 16(a)-(l) and 19(a)-(l) above, including emotional pain and suffering, humiliation, and inconvenience, in amounts to be determined at trial.

F.  Order Defendant Employer to pay Mary Jarrett punitive damages for its malicious and reckless conduct described in Paragraphs 16(a)-(l) and 19(a)-(l) above, in an amount to be determined at trial.

G.  Grant such further relief as the Court deems necessary and proper in the public interest.

H.  Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

*Faye A. Williams / PD*
FAYE A. WILLIAMS
Regional Attorney
TN #011730

*Celia S. Liner / PD*
CELIA S. LINER
Acting Supervisory Trial Attorney
AR Bar No. 90183

                    EQUAL EMPLOYMENT
                    OPPORTUNITY COMMISSION
Memphis District Office
1407 Union Avenue, Suite 901
Memphis, Tennessee 38104
(901) 544-0075

*/s/ Pamela B. Dixon*

**PAMELA B. DIXON**
Senior Trial Attorney
AR #95085

*/s/ Markeisha K. Savage*

**MARKEISHA SAVAGE**
Trial Attorney
TN #024693


EQUAL EMPLOYMENT
 OPPORTUNITY COMMISSION
Little Rock Area Office
820 Louisiana St., Suite 200
Little Rock, Arkansas  72201
(501) 324-5065
(501) 324-6474
pamela.dixon@eeoc.gov
markeisha.savage@eeoc.gov